IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA


UNITED STATES OF AMERICA,    )
    )
    Plaintiff,    )
    )
    -vs-    )  Case No. CR-24-56-J
    )
LOGAN EUGENE STAPLETON,    )
    )
    Defendant.    )




* * * * * * *

TRANSCRIPT OF PROCEEDINGS

HAD ON OCTOBER 1, 2024, AT 10:00 A.M.

BEFORE THE HONORABLE BERNARD M. JONES

U.S. DISTRICT JUDGE, PRESIDING

* * * * * * *




SENTENCING HEARING




Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

CHRISTINA L. CLARK, RPR, CRR
United States Court Reporter
200 N.W. Fourth Street, Suite 5419
Oklahoma City, Oklahoma  73102
christina_clark@okwd.uscourts.gov - ph(405)609-5123

<u>A P P E A R A N C E S</u>

<u>ON BEHALF OF THE GOVERNMENT</u>:

     Mr. Matthew P. Anderson
     Assistant United States Attorney
     U.S. Attorney's Office
     210 West Park Avenue
     Suite 400
     Oklahoma City, Oklahoma 73102

<u>ON BEHALF OF THE DEFENDANT</u>:

     Mr. Edward M. Blau
     Mr. Daniel Page
     BLAU LAW FIRM, PLLC
     101 Park Avenue
     Suite 600
     Oklahoma City, Oklahoma 73102

**P R O C E E D I N G S**

1       (The following proceedings were had October 1, 2024, with

2 Court, counsel, and defendant present:)

3       THE COURT:  Good morning to all of you.  We are here

4 in the case of United States vs. Logan Eugene Stapleton, Case

5 No. CR-24-56-2.  We are here because defendant has pleaded

6 guilty to a Superseding Information alleging possession of

7 methamphetamine with intent to distribute.

8       For the record, counsel, go ahead and enter your

9 appearances.

10       MR. ANDERSON:  Good morning, your Honor.  Matthew

11 Anderson on behalf of the United States.

12       MR. BLAU:  Morning, your Honor.  Ed Blau and Daniel

13 Page on behalf of Mr. Stapleton, who is seated next to me at

14 counsel table.

15       THE COURT:  Thank you so much.

16       I also note the presence of United States Probation

17 Officer Amy Jackson.

18       Mr. Anderson, the same two questions that I always ask:

19 Is the government in compliance with the Justice For All Act

20 and are you aware of any identifiable victims present who

21 would like to participate here today?

22       MR. ANDERSON:  Your Honor, the government is in

23 compliance, and the United States is not aware of any

24 identifiable victims in this case.

1      THE COURT:  Thank you for those announcements.

2      Now, in preparing for today, I have received and

3  considered the presentence investigation report, the

4  government's memorandum, defendant's sentencing memorandum and

5  motion for downward variance, which was filed under seal.

6      I have also received character letters from Gail Snyder,

7  Whitney Griffiths, Kelli Allen, and Becky Stapleton, as well

8  as a letter from the defendant.

9      Is either side aware of other submissions that I should

10  have received and considered for today's proceeding?

11      MR. ANDERSON:  No, your Honor.

12      MR. BLAU:  No, your Honor.

13      THE COURT:  All right.  Let me turn now to

14  Mr. Stapleton.  Go ahead and stand for me.

15      First of all, good morning, sir.  How are you?

16      THE DEFENDANT:  I'm all right.  I'm all right, your

17  Honor.

18      THE COURT:  Mr. Stapleton, let me ask you, did you

19  have an opportunity to read and discuss with your attorney the

20  presentence investigation report?

21      THE DEFENDANT:  Yes, your Honor.

22      THE COURT:  All right.  Go ahead and be seated.

23      And I presume, Mr. Anderson, that the government received

24  it as well.

25      MR. ANDERSON:  Yes, your Honor.

1      THE COURT:  All right.  Before I transition here,

2 let me inquire about the PSR.

3     Mr. Blau, do you all have an announcement?

4      MR. BLAU:  Yes, your Honor.  At this time we would

5 withdraw our objection regarding the source of the

6 methamphetamine.

7      THE COURT:  All right.  Thank you so much.

8     We'd note that the objection is withdrawn.  And in light

9 of that withdrawal, there are no objections to the PSR, and so

10 I'm prepared to adopt it as my findings on all undisputed

11 factual matters.

12     But before doing so, I note that it contemplates an

13 additional credit pursuant to USSG Section 3E1.1(b).  Said

14 motion has not been filed, and so let me ask, does the

15 government make an oral motion at this time?

16      MR. ANDERSON:  Yes, your Honor.  The United States

17 would move for an additional point under Sentencing Guideline

18 Section 3E1.1(b).

19      THE COURT:  All right.  Noting that, noting the

20 absence of objection as well, the motion is granted and the

21 additional credit will be applied.

22     Having done that, that results in an offense level of 37,

23 a Criminal History Category of VI, and a guideline range of

24 imprisonment of 360 to 480 months.

25     Do the parties agree that the guidelines have been

1  calculated accurately?

2          MR. ANDERSON:  Yes, your Honor.

3          MR. BLAU:  Yes, your Honor.

4          THE COURT:  All right.  Let me --

5          MR. ANDERSON:  Your Honor, the 480-month upper limit

6  is a result of the plea agreement and the charge of conviction

7  in this case.  Otherwise, the guidelines would be 360 to life.

8          THE COURT:  That's -- and that's what I was about to

9  announce.  Thank you so much for clarifying that,

10 Mr. Anderson.

11     And so in light of that, let me advise you all that I

12 have considered various departure guidelines and related

13 application notes but do not believe that departure is

14 appropriate in this instance.

15     Consequently, I will not be exercising my discretion in

16 that regard, but I will entertain requests for variance in

17 deciding an appropriate sentence.

18     Now, neither side has indicated that they intend to offer

19 any evidence.  So absent an announcement to the contrary, let

20 me invite Mr. Anderson to the lectern to make argument on

21 behalf of the government.

22          MR. ANDERSON:  Thank you, your Honor.

23     There are a number of facts and circumstances in this

24 case that demonstrate a need for a significant sentence in

25 this case.  The nature and circumstances of the offense,

1  the -- Mr. Stapleton being involved in the distribution --

2  possession and distribution of approximately 10 kilograms of

3  methamphetamine.

4     The fact that he did so less than one month after being

5  released from the Department of Corrections certainly

6  highlights the need for a sentence to reflect the seriousness

7  of the offense, promote respect for the law, and to promote a

8  deterrence, both specific and general deterrence in this case.

9        THE COURT:  And, Mr. Anderson, let me ask you --

10  and it's not just the quantity of methamphetamine that is

11  concerning, it's the quality as well.  Is that right?

12        MR. ANDERSON:  It is the quality, your Honor.

13     And, as noted in paragraph 13 of the PSR, Mr. Stapleton's

14  close association and the fact that he is -- if not one

15  step -- if not directly coordinated with this source, perhaps

16  just one step beyond that, that certainly highlights the

17  nature and seriousness of this offense.

18     Having said all that --

19        MR. BLAU:  I'm sorry, your Honor.  I didn't

20  understand what he -- his last statement.  If he could --

21        MR. ANDERSON:  Paragraph 13 reflects the closeness

22  that Mr. Stapleton was to the source of supply in this case.

23        MR. BLAU:  I didn't hear "source."  Thank you.

24        MR. ANDERSON:  Having said that, the need to reflect

25  the seriousness of the offense, promote respect for the law,

1 and to provide deterrence, all of which can be accomplished

2 with a sentence below the guideline offense level in this

3 case.

4      To start with, it is important to note that, despite

5 Mr. Stapleton's significant criminal history, he does not have

6 a longstanding history in the distribution and possession and

7 trafficking of controlled substances.

8      I believe that, if I recall correctly, he had one prior,

9 perhaps, citation for possession of a controlled substance

10 when he was much younger, and that was certainly user

11 quantity.  And that's reflected in paragraph 50 of the PSR.

12      Mr. Stapleton, while he has served time in prison, his

13 prison sentences have not been particularly lengthy.  I

14 believe that his longest one was just shy of four years.

15      And so when -- and then, lastly, when we look at the

16 guideline offense levels and the type of defendants that we

17 typically see who receive sentences in the 360 to 480 months,

18 it is those repeat drug traffickers, those who have done it

19 time and time again and have never stopped despite being

20 punished sometimes very significantly, and have continued

21 trafficking drugs, sometimes even from prison.

22      And Mr. Stapleton does not fit the general character of

23 those drug traffickers that do receive the sentences that

24 would be a guideline range in this case.

25      Obviously, between the almost four years and the 30 years

1  of what would be the low end of the guideline, that is a long

2  range.  But the government submits that a sentence of 120

3  months to 150 months would be the appropriate disposition in

4  this case.

5          That would serve the needs of sentencing, it would

6  reflect the nature and seriousness of Mr. Stapleton's offense,

7  it would promote respect for the law, provide for deterrence,

8  both general and specific, and it would also avoid unwarranted

9  sentencing disparities.

10         As I mentioned, the sentences of a guideline range are

11  typically of a defendant of a different quality and different

12  character than Mr. Stapleton.

13         THE COURT:  Let me ask you about his level of

14  culpability as compared to his codefendants.  I believe there

15  are four total defendants in this matter.  And I'm curious as

16  to, when you juxtapose his contribution and theirs, where do

17  you think he falls in line?

18         MR. ANDERSON:  Your Honor, I would say for the -- if

19  we look exclusively for the activities of January 9th, the day

20  he was arrested, I would say Mr. Stapleton appears similar to

21  Mr. Golston.

22         I would stay Mr. Golston, based on the investigation, had

23  engaged in the activities longer than Mr. Stapleton, a large

24  part of that being we know that Mr. Stapleton was not out of

25  prison at that time.

1          And at this time the United States does not have

2    information that he was engaged in the trafficking -- did not,

3    in the course of its investigation, discover information that

4    he was involved in trafficking while he was incarcerated.  So,

5    certainly, Mr. Stapleton has a shorter period of time.

6          Ms. Annesley, being the individual that dealt with both

7    Mr. Stapleton and Mr. Golston, I think, would be more culpable

8    than either of those two individuals.  And I would say

9    Ms. Bills would be at the lower end.

10          THE COURT:  All right.  Thank you so much.

11       Go ahead.

12          MR. ANDERSON:  Lastly, when we're talking about the

13    need to promote respect for the law and deterrence, I would

14    say Mr. Stapleton's post-arrest conduct certainly has

15    demonstrated that he is already on that path and certainly is

16    another reason why a below-guideline sentence would be

17    appropriate in this case.

18          THE COURT:  All right.  Thank you so much,

19    Mr. Anderson.  I appreciate that.

20       Mr. Blau.

21          MR. BLAU:  Thank you, your Honor.

22       May my client come up as well or do you want him to stay?

23          THE COURT:  He can stay for the time being.  Let me

24    visit with you before --

25          MR. BLAU:  Yes, sir.

          1            THE COURT:  You've heard Mr. Anderson's summary with

          2    respect to your client's level of culpability.  Would you

          3    agree or disagree?

          4            MR. BLAU:  I think, all in all, it's pretty

          5    accurate.

          6            THE COURT:  All right.

          7            MR. BLAU:  I think it's fair.  I think Ms. Annesley

          8    was the most culpable.  I think, situationally, my client was,

          9    on that day -- you could point to him as up there, but

         10    big-picture-wise, this was a situation where he got out of

         11    prison, of course.

         12            Unfortunately, his cellmate and the people he was in

         13    there with were involved in a lot of this.  He -- he knows

         14    that he made a tremendous mistake because he had a -- he has a

         15    real -- he had a nice girlfriend, he was -- he was -- in every

         16    conversation I've had with him or his mom, he was serious

         17    about not going back.

         18            And then those individuals, many of whom were connected,

         19    kind of sucked him back in.  And I guess that, yes, you can

         20    say nobody held a gun to his head.  Literally, that's the

         21    case, but metaphorically, especially if you have these

         22    connections, it can be difficult.

         23            That was kind of a long answer to a relatively short

         24    question.

         25            THE COURT:  No.  That's helpful.

1    I'll tell you, one, quality and quantity of these drugs

2  is really of concern, but I also think that the guidelines --

3  the calculated guidelines are influenced heavily by the

4  quality and the quantity.  And so I'm already mindful of that.

5  I'm already mindful, as well, of unwarranted sentencing

6  disparities, and so I take that into consideration.

7    The thing that troubles me most about Mr. Stapleton here

8  is the timing of all of this.  You look at his criminal

9  history and then you look and see that he immediately --

10  almost immediately -- within a month of being released --

11  transitions back to this unfortunate, unhealthy, and

12  destructive way of life.  And that's what concerns me most.

13    I intend to, for the reasons that I already announced --

14  the disparities and the quantity-driven calculation -- to vary

15  downward.  And I think that you, in your memorandum, make some

16  very, very compelling arguments, which I -- many of which I

17  agree to, I think.

18    Those that you spoke to, I think, in this particular

19  instance, are very accurate and help to better appreciate why

20  he finds himself here.  But that's the thing that gets me.

21  And I'm trying to, in finding the right sentence, do so in a

22  way that we not only instill in him greater respect for the

23  law but ensure that he is deterred from this kind of conduct

24  going forward.

25    What say you on that?

1          MR. BLAU:  Several points, your Honor.

2      The first point is that, as Mr. Anderson noted, my

3  client, when he went to prison, he did not go in for large

4  quantities of drug trafficking or anything of that nature.

5      He was a methamphetamine addict that was committing the

6  normal -- the normal -- the run-of-the-mill property crimes

7  that get drug addicts in prison in the State of Oklahoma.  And

8  it wasn't until he got in there and got paired up in his cell

9  or in his pod with individuals involved in this, I guess,

10 organized crime, for lack of a better term, that, when he gets

11 out he, within a month, starts participating in drug

12 trafficking.

13     And I think that, while not even he would disagree that

14 he made his own choices, the position that he was in was

15 because of the nature of his cellmate, the nature of the

16 people in his pod, the -- what you have to do to stay alive in

17 prison.  And when he gets out and he starts getting those

18 phone calls, it's very difficult to say no to those.

19     And, again, he has -- he's a grown man.  He has full

20 responsibility.  But, as Mr. Anderson said, this is not a

21 situation where my client is like a lot of my clients or

22 individuals you see that are -- that are moving load after

23 load of methamphetamine for months or years at a time.

24     That said, he also had no ownership of the drugs.  This

25 was a couple thousand bucks, moving it from point A to point B

1    to get back on your feet again. It's -- it's -- there's no

2    excuse. But the guidelines -- this is very weight driven.

3        And I have to, for the record, because I do it in every

4    one of these cases, say that the purity enhancement is

5    ridiculous. The less-than-pure methamphetamine doesn't exist

6    in any amount or any quantity, especially where we see it here

7    in federal court. Every bit of methamphetamine is ice because

8    it all comes from Mexico.

9        And I get why the enhancement is in there, but I just --

10    I just feel -- and it's just two points, and I get it, but

11    still I feel that it's ridiculous and that needs to be

12    revisited.

13        My client's mother and, basically, his second mom are

14    here with us today. I can tell -- I can tell this Court that

15    his mother, throughout the course of this, has maintained

16    close contact with my office, has been concerned for her son,

17    and has -- you know, has let me know that whatever time that

18    he gets, when he gets out she's going to be there for him, to

19    try to help him, to try to keep him on the track that he needs

20    to be on.

21        She doesn't have a lot of other family or close

22    relatives, and her son is basically all she has. So she's let

23    me know the import of him to her life, and my client has done

24    the same regarding his mom.

25        So I realize that in the grand scheme of things that

1   doesn't mean a whole lot, but I wanted your Honor to be aware

2   of -- so many of my clients come here and don't have anybody,

3   and, you know, I just felt it important that the Court knows

4   that he has people here who care about him.

5           THE COURT:  Well, that makes a difference.  And

6   certainly in the context of recidivism, that matters to have

7   that support.  But more than the support is having a desire

8   and a willingness to do and to be better.

9       And so, certainly, I'm curious -- it appears, not only

10  based on what Mr. Anderson said but certainly what I've read,

11  that Mr. Stapleton -- this may be his "road to Damascus"

12  moment that has caused him to do an about-face.  But only time

13  will tell.

14      Anything else, Mr. Blau?

15          MR. BLAU:  The only other thing is this.  It's that

16  I think that my client will qualify for the RDAP program, and

17  I think that even though it appears that his conduct in this

18  particular instance was driven as much by wanting to make a

19  little money as it was by an actual acute addiction at that

20  moment, I think that, given my client's past and everything

21  else, that his being able to go through the RDAP program would

22  greatly decrease the risks of recidivism, help him with all of

23  his issues, get a little time knocked off his sentence,

24  hopefully, and hopefully make it where your Honor or another

25  judge never has to see him again.

1        THE COURT:  Well, certainly, you and I agree on that

2   both in terms of the need and -- for the RDAP.  I certainly

3   hope he qualifies.  I'm going to make that recommendation.

4   And also the overarching hope that we don't see him again.

5        I often tell people -- most of the people I see, I would

6   say 90 percent of them are good people who make some bad

7   decisions.  And sometimes it takes circumstances like these to

8   get them to do an about-face.

9        And when they have these federal sentences where they

10  are -- also have the benefit of the federal programs and the

11  support to truly be rehabilitated, when they take advantage of

12  those, they're usually better for it.  So I hope that's the

13  case here.

14        MR. BLAU:  Thank you, your Honor.

15        And, lastly, the number -- or the range that I was going

16  to ask for would be about 100 to 120 months.  I mean, that's

17  just kind of the ballpark that I felt given what my client has

18  done since he was arrested, all of the 3553 factors.

19        I realize that the 120 is kind of at the low end of what

20  Mr. Anderson recommended, so I would just ask your Honor to

21  keep those numbers in mind.

22        THE COURT:  All right.  Thank you so much, Mr. Blau.

23        Mr. Stapleton, you are not required to make any statement

24  here today, but if you'd like to address the Court, I'd

25  encourage you to first visit with your attorney.  And then, if

```
 1   it's your desire, then make your way to the lectern.
 2              MR. BLAU:  Your Honor, he would -- my client would
 3   like to say something just briefly.
 4              THE COURT:  All right.  If you want to make your way
 5   to the lectern.
 6              THE DEFENDANT:  I just want to say sorry to the
 7   Court, your Honor.  I want to say sorry to my family for
 8   messing -- you know, it's hard out there, man.  I'm getting
 9   too old for this stuff.  I just made a bad decision.  Just
10   have mercy on me.  I just want to keep it short and sweet.
11              THE COURT:  All right.  Thank you, Mr. Stapleton.
12              THE DEFENDANT:  Thank you, your Honor.
13              THE COURT:  Go ahead and stay right there.
14         Mr. Blau, I just want to confirm.  Will this be his first
15   federal conviction?  That's my understanding.
16              THE DEFENDANT:  Yes.
17              MR. BLAU:  Yes, your Honor.
18              THE COURT:  All right.  And the reason I ask -- the
19   only reason why -- I normally would know this outright, but I
20   have been preparing for all of the others and so I worry that
21   sometimes I'm conflating.  But I think I've got this one
22   right, and I appreciate you and what you had to say here
23   today, Mr. Stapleton.
24         This Court is required to impose a sentence that is
25   sufficient but not greater than necessary to comply with the
```

1  purposes of sentencing identified at 18 U.S.C. Section

2  3553(a)(2).

3      In determining the sentence to be imposed in this case,

4  the Court has considered those factors, statements of the

5  parties, the plea agreement, the presentence investigation

6  report, the nature and circumstances of the offense, and the

7  history and characteristics of the defendant.

8      And, although advisory, the Court has considered the

9  guideline range for imprisonment as calculated under the

10 United States Sentencing Guidelines.

11     Mr. Stapleton, you are 35 years old and stand convicted

12 of possession of methamphetamine with intent to distribute, a

13 very serious offense not only for the quantity and quality of

14 the methamphetamine attributed to you but also because of your

15 criminal history, a history that is quite lengthy.

16     As reflected in the PSR, you've been charged with

17 burglary, protective order violations, using a weapon in

18 commission of a felony, domestic abuse, possession of a

19 firearm, and possession of controlled substances.

20     Noteworthy is that you had been out of the Department of

21 Corrections' custody for approximately one month at the time

22 that you committed the instant offense, which indicates that

23 you have little to no respect for the law and that prior

24 interactions with law enforcement and terms of

25 incarceration -- or term, I should say, of incarceration

1    failed as a deterrent.

2        While there are likely various reasons for your continued

3    engagement in crime, I suspect your affiliation with the Irish

4    Mob gang has played some part in your inability to embrace

5    pro-social activities, which makes recidivism likely.

6        But looking at your entire life's journey, I would also

7    attribute your station to the trauma that you experienced as

8    well as your extensive criminal history -- I'm sorry --

9    extensive history of substance abuse, both of which appear to

10   be driving factors for many of these poor decisions.

11       So in balancing these and other 3553(a) factors, mindful

12   of my duty to impose a sentence that is sufficient but not

13   greater than necessary, noting, again, that this will operate

14   as your first federal conviction, and as well as my

15   recognition that the calculated guidelines are quantity and

16   quality driven, and I have always affirmed at these

17   sentences -- sentencings, I should say, my commitment to

18   avoiding unwarranted sentencing disparities, I do believe that

19   some variance is warranted in this matter.

20       As such, your motion for downward variance is granted.

21   It is the judgment that you, Logan Stapleton, are hereby

22   committed to the custody of the Bureau of Prisons for a term

23   of 120 months.

24       Due to your inability to pay a fine, I am waiving that

25   fine.  I am recommending your participation in the Federal

1    Bureau of Prisons Inmate Financial Responsibility Program at a

2    rate determined by Bureau of Prisons staff in accordance with

3    that program.

4         I'm also, to the extent that you are eligible,

5    recommending your participation in the Residential Drug Abuse

6    Program while incarcerated.

7         Now, upon release from imprisonment, you shall be placed

8    on supervised release for a term of five years.  Within 72

9    hours of release from custody, you shall report in person to

10   the probation office in the district to which you are released

11   and you shall not -- and you shall, I should say, comply with

12   the standard conditions of supervision adopted by this Court

13   and shall not possess a firearm or other destructive device,

14   and you shall cooperate in the collection of DNA as directed

15   by law.

16        This Court is not imposing community service.  I am,

17   however, ordering your compliance with the special conditions

18   listed in Part D of the presentence investigation report.  And

19   I am adopting the probation officer's justification for each

20   of these conditions as detailed in the recommended conditions

21   of supervision section of the report.

22        You shall pay to the United States a special assessment

23   of $100, which shall be due immediately.

24        And I am further advising you that, pursuant to the plea

25   agreement, you have waived the right to appeal or to

1  collaterally challenge the sentence imposed by this Court

2  except under limited circumstances.

3       To the extent that a right of appeal survives this

4  waiver, you are advised that that appeal is to the United

5  States Court of Appeals for the Tenth Circuit, and that if you

6  cannot pay the cost of appeal, you may apply for leave to

7  appeal *in forma pauperis* -- that is, without payment of

8  costs -- for the transcript of the trial record and an

9  attorney at government expense.

10      Notice of appeal must be filed with the clerk of this

11  court within 14 calendar days or you may request the clerk to

12  now spread the same of record.

13      Mr. Blau, is your client prepared to announce whether he

14  intends to appeal or would you like to reserve your time?

15          MR. BLAU:  No, he's not appealing, your Honor.

16          THE COURT:  All right.  We note the announcement.

17      Let me inquire.  Any reason, beyond the arguments already

18  heard in advance, why this sentence is improper, Mr. Anderson?

19          MR. ANDERSON:  No, your Honor.

20          THE COURT:  Mr. Blau?

21          MR. BLAU:  No, your Honor.

22          THE COURT:  Any request with respect to place of

23  incarceration?

24          MR. BLAU:  My client indicated Texarkana would be

25  his preference.

1          THE COURT:  Texarkana.  All right.

2      To the extent, Mr. Stapleton, that the Bureau of Prisons

3  can accommodate you -- your request, I should say, I'm going

4  to make that request on your behalf.  I don't get to say where

5  they ultimately house you.  That is certainly within their

6  purview.  I simply will make a request.  I will do that for

7  you.

8          THE DEFENDANT:  Thank you, your Honor.

9          THE COURT:  You're welcome.

10     Mr. Anderson, dismissal of remaining counts?

11         MR. ANDERSON:  Yes, your Honor.  The United States

12  would move to dismiss the indictment returned on February 8,

13  2024, as to Mr. Stapleton.

14         THE COURT:  All right.  And Mr. Anderson is handing

15  Mr. Lee that Indictment -- I'm sorry -- the order of dismissal

16  with respect to the Indictment as it pertains to the

17  defendant, Logan Eugene Stapleton.

18     This Court, finding it in the best interest of justice,

19  does hereby dismiss the February 2024 Indictment that was

20  returned as to, again, the defendant in this matter.

21     I don't believe that there's any change in

22  circumstances -- I believe that this is a mandatory detention

23  circumstance -- so as to warrant the revisiting of that

24  question.  Is that correct?

25         MR. BLAU:  Yes, your Honor.

1              THE COURT:  All right.

2        With that then, let me ask:  Is there anything further

3    from the government?

4              MR. ANDERSON:  No, your Honor.

5              THE COURT:  Anything, Mr. Blau?

6              MR. BLAU:  No, your Honor.

7              THE COURT:  Sir, do you have any questions of this

8    Court?

9              THE DEFENDANT:  No, your Honor.

10             THE COURT:  All right.

11        With that, I want to thank you all.

12        Thank you, Ms. Jackson, for a job well done.

13        I want to thank you all.

14        Mr. Stapleton, I wish you all the best.

15             THE DEFENDANT:  Thank you.

16             THE COURT:  I really do hope that this is, as I

17   said, your "road to Damascus" moment.  I think you're right.

18   You are young, but at the same time you are entering a

19   different transition phase.

20        So I really do hope that you make the most of all the

21   services that are available to you so that you can go out and

22   be better than you came in.  All right?

23             THE DEFENDANT:  Thank you, your Honor.

24             THE COURT:  You're welcome.

25        With that, the defendant is remanded to the custody of

1    the United States Marshal, and we are adjourned.

2

3                (Proceedings concluded at 10:37 a.m.)

4

5                CERTIFICATE OF OFFICIAL REPORTER

6    I, Christina L. Clark, Federal Official Realtime Court

7    Reporter, in and for the United States District Court for the

8    Western District of Oklahoma, do hereby certify that pursuant

9    to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is

13   in conformance with the regulations of the Judicial Conference

14   of the United States.

15

16       Dated this 7th day of June, 2025.

17

18                              s/CHRISTINA L. CLARK_____
                                Christina L. Clark, RPR, CRR
19

20

21

22

23

24

25

CHRISTINA L. CLARK, RPR, CRR
United States Court Reporter
200 N.W. Fourth Street, Suite 5419
Oklahoma City, Oklahoma  73102
christina_clark@okwd.uscourts.gov – ph(405)609-5123